**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Nicholas K. Lagemann
1300 Mount Kemble Avenue
Morristown, New Jersey 07962
(973) 425-8210
NLagemann@mdmc-law.com

**SIDLEY AUSTIN LLP**
Jacquelyn Fradette (*pro hac vice* to be filed)
Alan Charles Raul (*pro hac vice* to be filed)
1501 K Street, NW
Washington, District of Columbia 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

*Attorneys for Specially Appearing Defendants MyHeritage Ltd. and MyHeritage (USA), Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | |
|---|---|
| ATLAS DATA PRIVACY CORP., JANE DOE-1, JANE DOE-2, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN<br><br>*Plaintiffs*,<br><br>v.<br><br>MYHERITAGE LTD., MYHERITAGE (USA), INC., RICHARD ROES 1-10, *fictitious names of unknown individuals*, and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>*Defendant*. | Civil Action No. |

## NOTICE OF REMOVAL

Defendants MyHeritage Ltd. (hereinafter "MyHeritage") and MyHeritage (USA), Inc. (collectively the "MyHeritage Defendants")[1] remove to this Court the state court action described below pursuant to 28 U.S.C. §§ 1332 and 1441. As grounds for this removal, the MyHeritage Defendants state as follows:

## D.N.J. LOCAL RULE 10.1 STATEMENT

1.     The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan.

2.     The address for Atlas Data Privacy Corporation is Five Greentree Centre, 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

3.     The remaining Plaintiffs' addresses are unknown to Defendants, who are filing this Notice of Removal.

4.     Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07012, and John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

5.     The named Defendants in this action are MyHeritage, Ltd., PO Box 50, Terminal Park, Or Yehuda 6037606, Israel, and MyHeritage (USA), Inc., 3098 Executive Parkway, Suite 275, Lehi, UT 84043 USA

---

[1] Defendants specially appear, subject to and without waiving their ability to assert any defense to this action, including lack of service or lack of personal jurisdiction. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 131-32 (3d Cir. 2020). Defendant MyHeritage Ltd., which is an Israeli corporation, has not been served.

6.      Defendants are represented by Nicholas K. Lagemann of McElroy, Deutsch, Mulvaney, & Carpenter, LLP, 1300 Mount Kemble Avenue, Morristown, NJ, 07962, and Alan Raul and Jacquelyn Fradette of Sidley Austin LLP, 1501 K Street NW #600, Washington, DC 20005.

## INTRODUCTION

7.      Plaintiff Atlas Data Privacy Corp. ("Atlas") along will Plaintiffs Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan ("Individual Plaintiffs") brought this case (and nearly 150 others with nearly identical allegations) purportedly to vindicate a statutory right for the removal of certain personal information from the Internet under Daniel's Law, N.J.S.A. § 47:1A-1, *et seq.*, and N.J.S.A. § 56:8-166.1.

8.      But Plaintiffs' actions and the allegations in their Complaint, make plain that Atlas was not actually motivated to remove protected information from the Internet, but rather, to blast out thousands upon thousands of spam email removal requests within such a compressed timeframe that they would not actually be received, and therefore, could not actually be processed. Rather than being sent individually by users who signed up for Atlas's services, as the Complaint implies, the alleged requests were in fact sent in enormous batches from a handful of IP addresses. Indeed, Atlas proudly advertises on its website that its removal request process for Law Enforcement is "fully automated."  And tens of thousands of emails were sent, not just to MyHeritage but to each of nearly 150 other companies, from a single domain "atlasmail.com," all within a short period.

9.      Given the spam-like attack on MyHeritage's servers, it is unsurprising that only *one* of the alleged mass of messages made it into MyHeritage's email inbox.  MyHeritage, thus, never

received the vast majority of the purported requests—in fact, all but that one were blocked by spam and anti-virus filters that are critical to protecting MyHeritage against malicious cyber attacks by bad actors. The sole request that MyHeritage did receive, further, was not from any of the Individual Plaintiffs, and the home address it requested be removed was never published on MyHeritage's website—*i.e.*, there was no home address to be removed in response to the one request that actually came through to MyHeritage.

10. This gamesmanship makes a mockery of the important purposes behind Daniel's Law without any genuine consideration of how to protect the individuals Atlas purports to represent. Atlas's actions—spamming nearly 150 companies mere weeks before filing identical lawsuits against them seeking billions of dollars in statutory penalties across the cases—was not plausibly designed to remove any personal information from any website. Had Atlas truly wanted to assist the supposed assignors in having their personal information removed from MyHeritage's website (to the extent any relevant information appeared on the website), it would have gone about this completely differently. It (or one or more persons actually covered by Daniel's Law themselves) could have sent a single message or other direct communication to MyHeritage rather than Atlas spamming MyHeritage servers from a handful of IP addresses, which is a tactic almost certain to trip spam filters and anti-virus protocols. And it could have explained—assuming it could do so truthfully—that it was representing approximately 20,000 people covered by Daniel's Law and provided MyHeritage with a list of information it was requesting to take down. Instead, Atlas did what it could to *avoid* MyHeritage actually receiving the requests.

11. Indeed, if Atlas had sent just one message advancing the interests of the purported assignors, MyHeritage would have taken immediate action—including taking down the entire public database in question. The database in question—New Jersey voter registration rolls, *see*

- 4 -

Comp. ¶ 40—was a public database, information from which was provided by MyHeritage on its website for free, without any monetization, as a service to genealogy community members who often rely on voter rolls since the U.S. census is only public up to the year 1950 and not for more recent years. MyHeritage was pleased to remove the database from its site of its own accord on March 5, 2024, shortly after it learned for the first time that a large number of individuals from New Jersey were purportedly requesting to have their information removed. Indeed, it only took MyHeritage a few minutes to depublish the database. In other words, as of that date, MyHeritage removed all of the information allegedly requested by Plaintiffs to be removed (and of everyone else) in the relevant database, which it does not intend to republish.

12.    In sum, rather than proceeding in a manner to serve the interests of any "Covered Persons" under Daniel's Law, Atlas designed a scheme to manufacture statutory claims with the sole goal of reaping a litigation windfall.

13.    Plaintiffs have also litigated in calculated ways as to manipulate jurisdiction. As is plain from its Terms of Use, the only entity that owns, operates, and controls myheritage.com,[2] the website on which Plaintiffs allege their protected information was published, is MyHeritage Ltd. Nevertheless, Plaintiffs joined MyHeritage's U.S. subsidiary, which operates a different website, not the website where the relevant database had been published, likely because it is incorporated in Delaware (like Atlas), in an attempt to defeat diversity jurisdiction. But given the utter lack of connection between MyHeritage (USA), Inc. and the allegations in this case, there is "no reasonable basis in fact or colorable ground supporting the claim against" it. *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). Thus, MyHeritage (USA) Inc. should be deemed fraudulently

---

[2] *See* https://www.myheritage.com/terms-and-conditions.

joined and its citizenship disregarded, *id.*, which means this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332(a)(2) and 1441(a): It is a civil action between citizens of different states and a citizen of a foreign state, in which the amount in controversy exceeds $75,000.

14.    In another crafty move, Atlas has also attempted to thwart federal jurisdiction by allegedly obtaining nearly 20,000 purported assignments and suing in its own name. In Atlas's plan, this scheme would enable it both to rely on Atlas's incorporation in Delaware to defeat diversity jurisdiction in a large portion of the cases and to prevent defendants from relying on the Class Action Fairness Act to remove what is clearly an action seeking to represent the interests of a class. But these alleged assignments are almost certain to be partial assignments, and partial assignments do not strip the assignors of their interest in this case or from being treated as members of a class. So, despite Atlas's attempt to avoid federal jurisdiction, this case is properly removed because the Court should disregard Atlas's citizenship due to the collusive assignments and, separately, pursuant to 28 U.S.C. § 1332(d) because the suit will be litigated functionally under class-like procedures, with representative plaintiffs appearing as stand-ins for a large class of people with similar putative harms who are not appearing personally in the suit.

15.    With Atlas's forum-shopping gamesmanship stripped away, it is plain that this Court properly has subject matter jurisdiction over this matter.

## **BACKGROUND**

16.    On or about February 7, 2024, Plaintiffs commenced an action against the MyHeritage Defendants in the Superior Court of New Jersey Law Division, Mercer County (the "State Court Action"). *See Atlas Data Privacy Corp. v. MyHeritage Ltd.*, No. MER-L-000282-24.

17.    On February 29, 2024, process was served on MyHeritage (USA), Inc.  MyHeritage Ltd. has not been served.  Under New Jersey rules of civil procedure, MyHeritage (USA), Inc.'s deadline to respond to the complaint in state court is April 4, 2024.  *See* N.J. Ct. R. 4:6-1(a).  Under 28 U.S.C. § 1446(b)(1), MyHeritage (USA), Inc.'s deadline to remove to federal court is April 1, 2024 (the first business day after March 30, 2024, which is a Saturday).

18.    MyHeritage (USA), Inc. has not yet filed an answer or responsive pleading to the Complaint, and no further proceedings have taken place in the State Court Action.[3]

19.    The Complaint brings a single claim for the violation of N.J.S.A. § 47:1A-1, *et seq.*, and N.J.S.A. § 56:8-166.1 ("Daniel's Law") on behalf of nearly 20,000 people.  Compl. ¶ 8.  Plaintiffs allege that 19,603 individuals represented by Atlas and seven individual plaintiffs requested that "Defendants cease disclosure of their home address and/or unpublished home telephone number."  Comp ¶¶ 25, 58.  They also allege that "Defendants did not cease the disclosure" within ten business days of the purported requests.  Compl. ¶¶ 59, 61.  And that "their failure in doing so each constitute a separate violation under the law."  Compl. ¶ 61.

20.    The Complaint seeks injunctive relief, actual damages not less than "$1,000 for each violation," punitive damages, and attorneys' fees and costs.  Compl. ¶¶ 62-63 & Prayer for Relief.

21.    The MyHeritage Defendants now bring this Notice of Removal on March 29, 2024, within the thirty days allotted for removal by 28 U.S.C. § 1446(b).

---

[3] However, Plaintiffs have filed a motion for consolidation in their earliest filed case in Mercer County, without serving or notifying the MyHeritage Defendants that their rights may be affected by that motion.  Plaintiffs have since filed a letter seeking an adjournment of that motion in underlying State Court Action until April 12, 2024.

22.    In accordance with 28 U.S.C. § 1446(a), a complete copy of the state court file is attached to this notice.  The Complaint (Exhibit 1) and Process Served on MyHeritage (USA), Inc. (Exhibit 2) constitute all process, pleadings, and orders served on the MyHeritage Defendants to date.  MyHeritage Ltd. has not yet been served.  Defendants have also attached Plaintiffs' consolidation motion (Exhibit 3), filed in a different state court docket, and Plaintiffs' request for an adjournment of that motion (Exhibit 4), filed in the relevant State Court Action.  A completed civil cover sheet is also attached (Exhibit 5).

## CITIZENSHIP OF THE PARTIES

23.    ***Defendants' Citizenship.***  For diversity purposes, a corporation is deemed to be a citizen of: (1) its state of incorporation; and (2) the state of its "principal place of business."  28 U.S.C. § 1332(c)(1).  None of the defendants are citizens of New Jersey.

   a.   MyHeritage Ltd. is a corporation organized under the laws of Israel, with its principal place of business in Israel.

   b.   MyHeritage (USA), Inc., is a corporation organized under the laws of Delaware, with its principal place of business in Israel.[4]

   c.   Plaintiffs also name 20 fictitious defendants, but their "citizenship" is "disregarded" for determining whether there is complete diversity.  28 U.S.C. § 1441(b).

---

[4] MyHeritage (USA), Inc. has a corporate office in Utah, but its senior executives are all based in Israel.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  No Plaintiff is alleged to be (or plausibly is) a citizen of Israel or Utah.

24.    ***Atlas's Citizenship.***  Atlas is a corporation organized under the laws of Delaware, with its principal place of business in New Jersey.  Compl. ¶ 24.  Therefore, it is a citizen of Delaware and New Jersey.

25.    ***Individual Plaintiffs' Citizenship.***  The Individual Plaintiffs each allege that they are residents of New Jersey or are or were police officers in New Jersey, who are required to be residents of New Jersey.  *See* N.J.S.A. § 40A:14-122.8. ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); *see also* N.J.S.A. § 52:14-7a(1), (3) (requiring "[e]very person holding an office, employment, or position … in the Executive, Legislative, or Judicial Branch of this State … [or] with a county, municipality, or other political subdivision of the State" to have their "principal residence" in New Jersey).  Accordingly, it is plausible that each Individual Plaintiff is a citizen of New Jersey.

        a.    Jane Doe-1 alleges that she is a police officer "working in Northern New Jersey."  Compl. ¶ 15.

        b.    Jane Doe-2 alleges that she is a "police officer who lives in Northern New Jersey."  Compl. ¶ 16.

        c.    Plaintiff Maldonado alleges that he is a police officer in Plainfield, New Jersey.  Compl. ¶ 17.

        d.    Plaintiffs Scott and Justyna Maloney alleges that they are "currently serving with the Rahway, New Jersey Police Department" and "live together in New Jersey."  Compl. ¶ 18.

        e.    Plaintiff Colligan alleges that he worked in the police department in Somerset, New Jersey, and is currently the "President of the New Jersey State Policeman's Benevolent Association."  Compl. ¶ 22.  It is plausible that he is a citizen of

New Jersey based on his former employment and current position with the Policeman's Benevolent Association.

f.  Finally, Plaintiff Sullivan alleges that he "is an 18-year veteran of the New Jersey Department of Corrections" and is currently the "President of New Jersey PBA Local 105." Compl. ¶ 23.  Like Plaintiff Colligan, it is plausible based on his current position with the PBA Local 105 that he is a citizen of New Jersey.

## DIVERSITY JURISDICTION

26.  This Court has jurisdiction because the properly joined parties are completely diverse from each other and the amount in controversy for at least one plaintiff, Atlas, exceeds $75,000.  *See* 28 U.S.C. §§ 1332(a), 1446(c)(2).  The Court has supplemental jurisdiction over any other claim.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) (holding that only one named plaintiff need satisfy the amount-in-controversy requirement, as 28 U.S.C. § 1367 "authorize[s] supplemental jurisdiction over the claims of other plaintiffs" who do not).

27.  **Complete Diversity.**  The named parties are completely diverse except for Atlas and MyHeritage (USA), Inc.  *See supra* ¶¶ 17-19 (explaining that the Individual Plaintiffs are all likely citizens of New Jersey and that MyHeritage Ltd. is a citizen of Israel for diversity purposes). The complete diversity requirement is still met, however, because (1) MyHeritage (USA), Inc. was fraudulently joined and because (2) Atlas's purported assignments were collusive.  In both circumstances, the Court should disregard the citizenship of the non-diverse party.

28.  *Fraudulent Joinder.*  The Court should disregard the citizenship of MyHeritage (USA), Inc because it was fraudulently joined as a defendant, meaning "there is no reasonable basis in fact or colorable ground supporting the claim against" it.  *In re Briscoe*, 448 F.3d at 216

("If the district court determines that the joinder was 'fraudulent' in [the] sense" that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant," "the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999))).

29.     Here, "there is no reasonable basis in fact or colorable ground supporting [a] claim against" MyHeritage (USA), Inc. because MyHeritage (USA), Inc. is completely unrelated to any of the allegations in the Complaint.  *Id.*

30.     Daniel's Law only provides for liability against "a person, business, or association" that "disclose[s]" protected information after "10 business days following receipt" of a "notification" by "[a]n authorized person" that the person is "requesting that the [business] … remove the protected information from the Internet."  N.J.S.A. § 56:8-166.1(a)(1)-(2), (b).  None of that could apply to MyHeritage (USA), Inc.

31.     MyHeritage (USA), Inc. does not own, control, or operate myheritage.com, which is the website Plaintiffs allege disclosed the information that forms the basis of their claims, and only MyHeritage Ltd. employees have access to or interact with privacy@myheritage.com, which is the email domain to which Atlas's purported assignors and the Individual Plaintiffs allegedly

sent the purported removal requests.[5]  *See* Compl. ¶¶ 39, 52.  MyHeritage (USA), Inc., instead,

maintains a different website (Geni.com).[6]

32.    There is simply no connection between MyHeritage (USA), Inc. and the allegations

in the Complaint supporting Plaintiffs' cause of action, which is likely why the Complaint does

not even attempt to make any specific allegations against MyHeritage (USA), Inc.  *See* Compl.

¶ 37 (the only paragraph that separately mentions MyHeritage (USA), Inc. is just a vague

conclusory statement that fails to connect it to myheritage.com, privacy@myheritage.com, or any

of the other allegations elsewhere in the complaint).  *Cf. Forero v. APM Terminals*, No. 18-cv-

13754, 2019 WL 6168031, at *5 (D.N.J. Nov. 19, 2019) (dismissing count that failed to

"differentiate between defendants" and only "vaguely assert[ed]" that all the defendants "owned

and/or maintained" and "were responsible for" the "containers involved in the accident").  Even a

little diligence on Plaintiffs' part would have revealed that the only proper defendant is

MyHeritage Ltd.  The Terms and Conditions of myheritage.com state clearly:  "The Service is

owned and operated by MyHeritage Ltd."[7]

33.    Accordingly, there is "no reasonable basis or colorable ground" that MyHeritage

(USA), Inc. could be held liable for any of the allegations in the Complaint.  *In re Briscoe*, 448

---

[5] A notice of removal "need not contain evidentiary submissions."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014).  It is enough to make "plausible" assertions. *Id.*  Nevertheless, MyHeritage is prepared, if its plausible averments here were challenged in a motion to remand, to provide evidentiary submissions regarding these points in support of its opposition.  *See, e.g.*, *Various Plaintiffs v. Various Defendants (Oil Field Cases)*, 673 F. Supp. 2d 358, 367-68 (E.D. Pa. 2009) (considering, among other evidence, affidavits from owners of the defendant "going to the nature of the … business").

[6] *See* https://www.geni.com.

[7] https://www.myheritage.com/terms-and-conditions.  *Compare* https://www.geni.com/company/terms_of_use (noting MyHeritage (USA), Inc. as its operator).

F.3d at 216. MyHeritage (USA), Inc. could not have "recei[ved]" any notification sent to privacy@myheritage.com, MyHeritage (USA) Inc. could not have "disclose[d]" the protected information on myheritage.com, and MyHeritage (USA) could not have removed any alleged protected information from that website. *See* N.J.S.A. § 56:8-166.1(a)(1)-(2), (b).

34.     That is enough to show fraudulent joinder and to disregard MyHeritage (USA), Inc.'s citizenship. *See Weaver v. Conrail, Inc.*, No. 09-cv-5592, 2010 WL 2773382, at *9 (E.D. Pa. 2010) (finding fraudulent joinder, based on proof provided by defendants, that the non-diverse defendant did not "own, operate, maintain or control the railroad tracks where Plaintiff was injured at the time of her accident").

35.     *Collusive Assignments.*    Separately, the Court should also disregard Atlas's citizenship because its purported assignments are collusive partial assignments. This conclusion follows from that fact that at least some of the relief sought in the Complaint (for example, the injunctive relief) would redound only to the alleged assignors, and not to the putative assignee. *See Att'ys Tr. v. Videotape Comput. Prod., Inc.*, 93 F.3d 593, 597 (9th Cir. 1996) (explaining that "courts have remained sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) (holding that courts have "both the authority and responsibility … to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal"). Moreover, it seems inconceivable that Atlas could seek to collect at least one thousand dollars of statutory damages per "Covered Person" and not be contractually obligated to share any of such possible recovery with the statutorily protected individuals—which makes any purported

assignment quintessentially "fractional." *See JMTR Enters., LLC v. Duchin*, 42 F. Supp. 2d 87, 90 (D. Mass. 1999) ("[T]he assignment of this fractional interest should not have the effect of depriving … the noncitizen, of the federal forum which Congress has provided.").

36.    Even if the purported assignments were complete and not partial, the Court can still find that they were collusive and disregard Atlas's citizenship. *See First Nat'l Bank in Sioux Falls for Sequoia Charitable Tr. v. Warner Bros. Ent., Inc.*, No. 09-cv-674, 2009 WL 10671378, at *4 (C.D. Cal. July 10, 2009) (explaining that distinction between complete and partial assignments "is ultimately a non-starter because 'even when there is a complete assignment, collusion may be found' if 'there is an excellent opportunity for manipulation" (quoting *Att'ys Tr.*, 93 F.3d at 596-97)).

37.    Given Atlas's conduct in the lead up to this litigation, this Court should "exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising [its] authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction." Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3641 (3d ed.).  Atlas simply is not a real party in interest.  Rather, it has attempted to used these purported assignments as a litigation tool to reap a windfall from Daniel's Law rather than to protect any "Covered Person" or any alleged assignor.  The real parties in interest are those individuals who genuinely want their protected information removed from the Internet.  Accordingly, Atlas's citizenship should be disregarded due to these collusive assignments.

38.    With MyHeritage (USA), Inc.'s citizenship and/or Atlas's citizenship disregarded, this case meets the complete diversity requirement.

39.    **Amount in Controversy.**  Removal is proper "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. §§ 1332(a),

- 14 -

1441(b). Atlas meets the required amount in controversy. It purports to bring claims as the assignee of "approximately 19,603" "Covered Persons." Compl. ¶ 25. And Daniel's Law provides for an award of damages "*not less than* … $1,000 for each violation of this act[.]" N.J.S.A. § 56:8-166.1 (emphasis added). So, arguably, if Atlas were successful for just the minimum damages it seeks, it would conceivably obtain a judgment for over $19.6 million, well above the $75,000 amount-in-controversy requirement. That is enough.[8]

## CAFA JURISDICTION

40.    This Court has jurisdiction because this matter is in substance a "class action" under the Class Action Fairness Act of 2005 ("CAFA"), and it meets the CAFA removal requirements. *See* 28 U.S.C. § 1332(d).

41.    "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). CAFA grants federal courts original jurisdiction of any civil action over putative class actions that have: (1) minimal diversity; (2) 100 or more putative class members; and (3) an aggregate amount in controversy over $5,000,000. *See* 28 U.S.C. § 1332(d); *see also Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting § 1332).[9]

---

[8] The MyHeritage Defendants vigorously deny any violation of the law and dispute that any Plaintiff is entitled to any of the relief sought in the Complaint. *See Callery v. HOP Energy, LLC*, 620 F. Supp. 3d 223, 227 (E.D. Pa. 2022) ("Defendant does not need to concede liability to establish federal jurisdiction.").

[9] By seeking CAFA removal jurisdiction, the MyHeritage Defendants do not concede that the putative class should be certified. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 119 (3d Cir. 2019) (holding that a federal court does not lose jurisdiction over a case removed under CAFA even if it later denies certification).

42.    **Minimal Diversity**.  CAFA requires only minimal diversity, *i.e.*, that "any member of a class of plaintiffs is a citizen of a State different from any defendant," or "any member of [the class] is a citizen of a State and any defendant is … a citizen … of a foreign state."  28 U.S.C. § 1332(d)(2)(A), (D).  The minimal diversity requirement is met because at least one putative class member is a citizen of New Jersey, and no Defendant is a citizen of New Jersey.  *See* Compl. ¶¶ 15-23; *supra* ¶¶ 17-19.

43.    **Numerosity**.  CAFA requires that the proposed class consist of at least 100 members.  28 U.S.C. § 1332(d)(5).  In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  28 U.S.C. § 1332(d)(1)(D).  Here, the named Plaintiffs have asserted claims on behalf of "approximately 19,603 individuals."  Compl. ¶ 25.  And "partial assignees may properly be treated as class members" in determining whether a class meets the numerosity requirement for a class action.  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251-52 (3d Cir. 2016).  Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for the purposes of CAFA jurisdiction.

44.    **Amount in Controversy**.  CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Plaintiffs have placed much more than $5 million in controversy here.  Plaintiffs allege that Defendants did not comply with Daniel's Law with respect to the rights of 19,610 persons allegedly protected by the law (the purported assignors plus seven named plaintiffs).  *See, e.g.,* Compl. ¶¶ 28, 58-63.  That means, as a minimum, the Complaint seeks to recover $19,610,000 for the class.

45. **Exceptions do not apply.** CAFA provides exceptions to the application of federal jurisdiction. 28 U.S.C. § 1332(d)(3)-(4). None apply here. Each CAFA exception requires, as a starting point, an in-state defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception) or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions)). Here, as shown above, neither named Defendant is a citizen of New Jersey, and the citizenship of the Doe Defendants is disregarded. *See* 28 U.S.C. § 1441(b)(1). Thus, none of the CAFA exclusions apply.

46. **Class Action Analog.** Finally, CAFA defines "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The "analogous state law" need not be explicitly named in the complaint to count as a class action under CAFA, otherwise "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). Thus, as the Third Circuit explained, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face," the court "must cut through any pleading artifice to identify whether the case is in substance an interstate class action." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 819 (3d Cir. 2023). And as the Supreme Court cautioned, "courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements." *Id.* (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)). Here, Atlas purports to represent the interests of a class of nearly 20,000 "Covered Persons," who are absent and unnamed. And much of the requested relief is only beneficial to the alleged individual assignors, and the likely partial assignments similarly retained

- 17 -

rights for those absent parties.  The purported assignments, therefore, are an end-run around the class action mechanism, for which Congress expressly intended to facilitate litigation before a federal court.  Plaintiffs (and the purported assignors) in every respect but name plead a class; this is a putative class action complaint.

47.    Because this case satisfies all of the procedural requirements of CAFA removal, the Court has subject matter jurisdiction.

## OTHER REQUIREMENTS FOR REMOVAL

48.    In addition to demonstrating that this removal is timely and that subject matter jurisdiction exists, MyHeritage has satisfied all other requirements for removal.

49.    **Removal to Proper Court**.  Removal to this Court is proper because this Court is part of the "district and [vicinage] embracing the place where" the State Court Action was filed— Mercer County, New Jersey.  28 U.S.C. § 1441(a).

50.    **Forum Defendants**.  None "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

51.    **Notice to Parties and State Court**.  Pursuant to 28 U.S.C. § 1446(d), in addition to serving a copy of this Notice of Removal upon counsel for Plaintiffs, MyHeritage (USA), Inc. is filing notice in the State Court Action and serving upon Plaintiffs a separate document titled "Notice of MyHeritage Defendants' Filing Notice of Removal to Federal Court."

52.    Finally, the removal of this action to the District of New Jersey does not waive the MyHeritage Defendants' ability to assert any defense to this action, including but not limited to their right to move to dismiss based on lack of personal jurisdiction.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 131-32 (3d Cir. 2020).

- 18 -

WHEREFORE, the MyHeritage Defendants respectfully request that this action be removed in its entirety to this Court.

Dated: March 29, 2024

Jacquelyn Fradette (*pro hac vice* to be filed)
Alan Charles Raul (*pro hac vice* to be filed)
1501 K Street, NW
Washington, District of Columbia 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com
*Attorneys for Defendants MyHeritage Ltd.
and MyHeritage (USA), Inc.*

By:   /s/ Nicholas K. Lagemann
Nicholas K. Lagemann
McElroy, Deutsch, Mulvaney, &
Carpenter, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 425-8210
NLagemann@mdmc-law.com
*Attorney for Defendants MyHeritage Ltd.
and MyHeritage (USA), Inc.*

- 19 -

## <u>CERTIFICATION PURSUANT TO D.N.J. LOCAL RULE 11.2</u>

Pursuant to D.N.J. Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not subject to any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice:  Case No. MER-L-000282-24 in the Superior Court of New Jersey, Law Division, Mercer County.

Dated: March 29, 2024                                    MyHeritage Ltd.


                                                        By:  /s/ Nicholas K. Lagemann
                                                        One of its attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal was

served on the following counsel of record using the CM/ECF system and via email on March 29,

2024:

GENOVA BURNS LLC
Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, NJ 07102
Telephone:    973-533-0777

    -and-

MORGAN & MORGAN
John A. Yanchunis
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone:    813-223-5505

By:   /s/ Nicholas K. Lagemann